COMMONWEALTH vs. EDDIE LEE WILLIAMS.

Suffolk. October 3, 1979. — January 24, 1980.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, WILKINS, & LIACOS, JJ.

*Insanity. Homicide. Evidence*, Admissions and confessions. *Practice, Criminal*, Motion to suppress, Capital case.

At a criminal trial in which the defendant raised an insanity defense, the judge did not err in admitting as evidence of the defendant's state of mind a statement made to the police where the defendant's expert witness had testified that he had relied on the statement, in part, in forming his opinion that the defendant was not criminally responsible. [604-606]

There was no merit to a defendant's contention that the judge erred in denying his motions for a directed verdict or that he was denied effective assistance of counsel. [606]

INDICTMENT found and returned in the Superior Court on December 12, 1977.

---

The case was tried before *Nelson,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Renee D. Chotiner* for the defendant.

*Kevin Connelly,* Legal Assistant to the District Attorney (*Michael J. Traft,* Assistant District Attorney, with him) for the Commonwealth.

LIACOS, J. The defendant, Eddie Lee Williams, was indicted for murder in the first degree in December, 1977. In August, 1978, a jury found the defendant guilty of murder in the second degree, and the judge sentenced him to life imprisonment at the Massachusetts Correctional Institution at Walpole. This appeal is before the court under the provisions of G. L. c. 278, §§ 33A-33G. We affirm the conviction.

We summarize the evidence presented. The victim, Linda M. Cummings, lived with her mother, Evelyn Gallant, her brother, Eugene Gallant, and her two children at 92 Easton Street, Allston. The defendant was the father of one of Linda's children. The defendant frequently visited Linda at her Allston residence and spent the night of October 29, 1977, and most of the following day there.

On the evening of October 30, Eugene Gallant retired to his room about 8 P.M. Shortly thereafter he heard Linda's voice raised in argument. At 8:30 P.M. Linda brought Eugene a plate of food. Eugene had a brief conversation with the defendant in his room about 10 P.M. Shortly thereafter, Mrs. Gallant saw the defendant with her daughter, Linda. Mrs. Gallant conversed briefly in her bedroom with Linda about 11:30 P.M.

At approximately 1:45 A.M. Eugene and Mrs. Gallant heard screams. The two went downstairs and saw Linda on the living room floor. Her body had been badly slashed, and there was a great deal of blood. Eugene telephoned the police. Five to ten minutes later, he admitted police officers through the front door by unlocking both spring and chain locks. Prior to the arrival of the police, Eugene noticed that the back door, which he had previously locked, was ajar.

A Boston police officer arrived at 92 Easton Street about 1:55 A.M. on October 31, 1977. On the back stairway he observed red spots approximately one-half inch in diameter. He found a State lottery ticket bearing handwriting and a bottle of pills on the stairway descending from the rear door of the house to the backyard. In addition, he found plastic bags containing clothing, letters, and personal effects belonging to the defendant. The police sergeant investigating the murder issued a city-wide radio bulletin.

A taxi driver picked up the defendant near the corner of Commonwealth Avenue and Babcock Street on October 31, at 2:05 A.M., and drove him to 24 Wabon Street, Roxbury. As a result of the defendant's failure to pay the taxi fare, the driver communicated with his radio dispatcher and was joined by police officers who accompanied him to the door of 24 Wabon Street. They were admitted by Iwilla Thorn, the occupant of the apartment.

The police found the defendant in a bedroom lying across a bed. One officer observed a knife among some cosmetic jars on a bureau. As the defendant made a phone call in an attempt to raise the fare, the officers noted what appeared to be dried blood on his hands. The defendant's bank identification card bearing the name Eddie Lee Williams alerted the officers to the radio bulletin concerning Williams as a homicide suspect. The defendant was then detained for fare evasion and homicide. Later that morning the officers returned to the Thorn apartment to retrieve the knife.

The defendant's clothing was taken from him at the police station. The reddish brown stains on the clothing and knife were found to be human blood, but tests as to age and blood type proved inconclusive. After advising the defendant of his Miranda rights, the police questioned him.

The medical examiner testified that the victim died of multiple stab wounds of the extremities and chest. The knife recovered from the Thorn apartment was consistent with the nature of the stab wounds on the victim's body.

Defense counsel, appointed by the judge, filed over twenty-five pretrial motions with the judge. The defend-

ant's motions for a list of all police interviewees, and to exclude any police officer from sitting with the assistant district attorney during jury selection were denied. Prior to trial the defendant also moved to suppress all statements of the defendant, all tangible evidence seized from the defendant, i.e., the knife allegedly taken from 24 Wabon Street, Roxbury, and the clothing of the defendant. After a hearing, the trial judge denied the motion to suppress with respect to all objects seized. The judge postponed a hearing on the defendant's motion to suppress his statement to police officers until the Commonwealth attempted to introduce it. The statement was not offered as part of the Commonwealth's case-in-chief.

The defendant's case consisted of three witnesses on the issue of insanity. Their testimony was that the defendant suffered a "psychotic break" during his service in Vietnam from which he had not recovered and for which he received psychiatric treatment and medication at a Veterans' Administration clinic. He suffered from what was characterized as chronic paranoid schizophrenia. One of the defendant's expert witnesses, Dr. Bernard Yudowitz, testified that he had conducted a psychiatric examination of the defendant, was familiar with the defendant's medical history, and had read various police reports including a transcript of statements the defendant made to police on the night of his arrest. Dr. Yudowitz further testified that in his opinion the defendant, on October 30, 1977, due to his mental illness did not have the capacity to conform his conduct to the requirements of the law. At the close of his case, the defendant renewed his motions for a directed verdict which the judge again denied.

The Commonwealth's case-in-rebuttal consisted of the testimony of one psychiatrist and a stipulation regarding the testimony of a second psychiatrist. Both of these expert witnesses were of the opinion that the defendant was criminally responsible. The Commonwealth also introduced in evidence the statement made by the defendant at the police station as evidence of the defendant's mental state at that

time, as well as the testimony of a police officer who observed the defendant's demeanor during the statement.

Many of the assignments of error argued on this appeal are not based on exceptions. The defendant has no right of appellate review in the absence of an exception. *Commonwealth* v. *Underwood*, 358 Mass. 506 (1970). In some instances, where exceptions were taken, the defendant now claims error based, in whole or significant part, on issues and theories not presented to the judge. Such arguments also are not properly before us. *Commonwealth* v. *Johnson*, 374 Mass. 453 (1978). We consider here only those claims of error properly raised, or those which raise a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman*, 352 Mass. 556 (1967).

We first reach an assignment of error relative to the admission in evidence of the defendant's statement to police. The defendant's motion to suppress and supporting affidavit alleged, inter alia, that his statement was coerced and involuntary, that he was "tricked" into speaking, and that he was incapable of a voluntary waiver of rights because of his mental condition. The judge postponed a hearing on the defendant's motion to suppress his statement to police officers until the Commonwealth attempted to introduce it. The Commonwealth did not attempt to introduce this statement in its case-in-chief. However, on cross-examination of one of the defendant's expert witnesses, Dr. Bernard Yudowitz, testimony was elicited to the effect that the doctor had considered this statement in forming an opinion as to the defendant's criminal responsibility. The defendant made no objection at that time. Later, during the Commonwealth's case-in-rebuttal, an expert witness for the Commonwealth testified that he had also relied on this statement in forming an opinion as to the defendant's criminal responsibility. Again, no objection was raised by the defendant. Finally, during its case-in-rebuttal, the Commonwealth sought to introduce the statement itself, arguing that since the jury had already heard testimony about the statement, they should have the statement before

them so they could make their own determination of its rationality and coherence. The judge admitted the statement and instructed the jury that they were not to consider the truth of what was asserted, but rather they were to consider the statement for the limited purpose of assessing the defendant's criminal responsibility. The defendant objected to the admission of the statement as evidence of his state of mind on the ground that its prejudicial effect outweighed its probative value. The defendant did not request a voir dire on the issue of the voluntariness of the statement, nor did he later request a jury instruction on that issue. The statement was read to the jury by the police officer who conducted the interrogation.

The defendant argues that the allegations of involuntariness in his motion to suppress were sufficient to require the judge sua sponte to initiate a voir dire on the issue of voluntariness and to rule on that issue before the statement could be considered by the jury. *Commonwealth* v. *Chung,* 378 Mass. 451 (1979). *Commonwealth* v. *Harris,* 371 Mass. 462 (1976). While the defendant correctly asserts that his failure to make a focused objection at trial is not necessarily a waiver where the judge is obligated sua sponte to conduct a hearing,[1] we conclude that, in the circumstances of this case, the defendant's own use of the statement obviated any need for such a hearing.

The defendant's expert witness, Dr. Yudowitz, considered the statement in forming his opinion that the defendant was not criminally responsible. The defendant's expert

[1] *Commonwealth* v. *Chung,* 378 Mass. 451 (1979), and *Commonwealth* v. *Harris,* 371 Mass. 462 (1976), involved confessions offered as part of the Commonwealth's case-in-chief. The defendant's statement in the case at bar, while possibly inculpatory on the issue of insanity (cf. *Blaisdell* v. *Commonwealth,* 372 Mass. 753, 760 [1977]; *Walker* v. *Butterworth,* 599 F.2d 1074, 1082-1083 [1st Cir. 1979]), was not a confession of guilt and was not offered as part of the Commonwealth's case-in-chief. The defendant's statement was admitted during the Commonwealth's case-in-rebuttal, not for the truth but as evidence of the defendant's state of mind. We need not reach the question whether the voir dire requirement of *Chung* and *Harris* applies to the admission, under a limiting instruction, of a statement such as the one before us, as we dispose of the matter on other grounds.

put the statement in issue by relying on it, in part, as the basis of his opinion. The prosecutor was entitled to explore the basis of the expert witness's opinion on cross-examination. The defendant will not now be heard to complain that the judge erred in admitting the statement as evidence of the defendant's state of mind. See *Commonwealth* v. *Taylor*, 327 Mass. 641 (1951). Cf. *Blaisdell* v. *Commonwealth*, 372 Mass. 753, 766 (1977). When a defendant, acting through competent counsel, puts particular evidence in issue, he may not effectively argue on appeal that his own trial strategy denied him his constitutional rights. See *United States* v. *Bosch*, 584 F.2d 1113, 1124 (1st Cir. 1978), citing *United States* v. *White*, 377 F.2d 908, 911 (4th Cir.), cert. denied, 389 U.S. 884 (1967).

We find no merit in the defendant's contention that the judge erroneously denied his motions for a directed verdict. Viewing the evidence in its light most favorable to the Commonwealth, we find that there was enough evidence to have satisfied a rational trier of fact of each element beyond a reasonable doubt. *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979).

Nor do we find any merit in defendant's assertion that he was denied effective assistance of counsel. We cannot say that the behavior of counsel fell measurably below what might be expected from "an ordinary fallible lawyer." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974).

The defendant's remaining assignments of error are either not based on an exception or objection at trial, or present issues other than those advanced below.[2] Having considered the defendant's arguments with respect to these issues,

---

[2] We reiterate here what we stated in *Commonwealth* v. *Johnson*, 374 Mass. 453, 465 (1978): "Neither the conventional type of appellate review permitted in a criminal case, nor the special type prescribed by G. L. c. 278, § 33E, for a 'capital case,' is intended to afford an opportunity, from the vantage point of hindsight, to comb the trial record for interesting questions which could have been, but in fact were not, raised at the trial, or to attempt to convert the consequences of unsuccessful trial tactics and strategy into alleged errors by the judge" (citations omitted).

we find them to be without merit. We have carefully reviewed the transcript under our duty prescribed by G. L. c. 278, § 33E, and find no reason to disturb the verdict.

*Judgment affirmed.*