COMMONWEALTH vs. ROBERT COLLINS.

Barnstable.   September 10, 1980. — January 8, 1981.

Present: BROWN, DREBEN, & KASS, JJ.

*Admissions and Confessions. Constitutional Law,* Waiver of constitu-
tional rights. *Waiver. Practice, Criminal,* Voir dire, Voluntariness
of confession, Disclosure of identity of informant, Waiver of jury trial.
*Eavesdropping. Evidence,* Admissions and confessions, Preliminary
question.

The failure of a judge at a criminal trial to instruct the jury, sua sponte, to
    disregard the defendant's incriminating statements if they found them
    involuntary constituted reversible error where there was evidence that
    a State trooper had cornered the defendant while nude in the bath-
    room of a motel room, arrested him, pushed a revolver in his face, and
    had forced the defendant to lie, naked and handcuffed, face down on
    the floor for fifteen minutes and that it was while the defendant was
    prostrate and nude that he was given the Miranda warnings, ques-
    tioned by the police, and made the incriminating statements.
    [128-137]
At a criminal trial, there was no error in admitting in evidence statements
    of the defendant which were overheard by police stationed in a motel
    room adjoining the defendant's room when they placed their ears
    against a door connecting the rooms. [137-139]
On a showing at a criminal trial that an unidentified informer's testimony
    may be relevant and material to a determination of a defendant's guilt
    or innocence, a judge may hold an *in camera* proceeding to determine
    whether the Commonwealth should be required to disclose the identi-
    ty of the informer. [139-140]
The judge at a criminal trial did not err in refusing to accept the defend-
    ant's waiver of a jury trial where he had concluded that certain pre-
    trial matters which had come to his attention, including statements of
    defense counsel, would unfairly prejudice, at least in appearance, the
    rights of the defendant. [140-141]

INDICTMENTS found and returned in the Superior Court
Department on April 3, 1979.

The cases were tried before *Wagner,* J.

*Alfred Paul Farese* for the defendant.

*W. James O'Neill,* Assistant District Attorney, for the Commonwealth.

DREBEN, J.  The defendant was convicted of possession with intent to distribute cocaine and tuinal (G. L. c. 94C, § 32).  Shortly after his arrest in a motel room in which more than 500 grams of cocaine and 1200 capsules of tuinal were found, the defendant stated to the police that all the drugs were his.  Prior to the admission in evidence of this and other incriminating statements, the judge at the defendant's request held a voir dire and ruled that the defendant had been fully advised of his Miranda warnings and that he had made a "knowing, willing and freely voluntary waiver of those rights."  Although this conclusion was justified by the evidence at the voir dire hearing, evidence at trial, subsequent to the admission in evidence of the defendant's incriminating statements, raised a substantial question of police coercion.  A State trooper testified at trial that he had cornered the defendant while nude in the bathroom, arrested him, pushed a revolver "in his face," "towards his mouth," and had forced the defendant to lie naked and handcuffed, face down on the floor for fifteen minutes.  It was during this period, while prostrate and nude, that the defendant was given his Miranda warnings, was questioned by the police, and made his incriminating statements.

The defendant claims the judge erred (1) in admitting the statements in evidence and in finding that the defendant had knowingly and voluntarily waived his right to remain silent; (2) in permitting the Commonwealth on rebuttal to introduce other statements of the defendant, obtained by police eavesdropping; (3) in refusing to order the Commonwealth to reveal the name of an informer who had first led the police to the defendant, and who had been with the defendant when the statements obtained by eavesdropping had been made; and (4) in refusing to allow the defendant to waive a jury trial.

We conclude that the evidence of coercion at trial subsequent to the voir dire hearing raised the issue of the volun-

tariness of the defendant's statements, and that our "humane practice," required the judge, sua sponte, to instruct the jury to disregard the defendant's incriminating statements if they found them involuntary. *Commonwealth* v. *Vick*, 381 Mass. 43, 46 (1980). See *Commonwealth* v. *Harris*, 371 Mass. 462 (1976) (*Harris I*). The failure by the judge to give such instructions constitutes reversible error and requires a new trial.

We turn to the circumstances in which the defendant's statements were made. Additional facts will be set forth as necessary in discussing those issues which are likely to recur on a retrial.

1. *The voluntariness of the defendant's statements.* After receiving a tip from an informer that drugs were being distributed in the defendant's hotel room at Dunfey's Hyannis Motor Resort, State police officers, with the permission of the motel management, stationed themselves in an adjoining motel room. From this vantage point, and during the course of an afternoon, they overheard conversations of four or five men and one woman, including conversations of the defendant and the informer. The police procured a search warrant to search the defendant's room. No issues relating to the search warrant are involved in this appeal.

Officer Melia was the Commonwealth's first witness at trial. He testified that, when he and other officers entered the defendant's motel room, he saw the defendant running nude across the room into the bathroom area and saw a woman, apparently asleep in bed. The defendant was advised that the police had a search warrant and were going to conduct a search for narcotics. Officer Melia searched the room and found, inter alia, four bags of white powder, twelve bottles containing capsules of tuinal, $6,920 in cash, a microscope, two scales, straws that could be used to ingest cocaine, sifters and mannitol (an agent to dilute cocaine). The powder and capsules were subsequently sent to the State police chemical laboratory for analysis. Officer Melia was asked whether he had had any conversations with the

defendant. At this point, defense counsel requested, and the court granted, a voir dire outside the jurors' presence.

a. *Evidence at the voir dire hearing.* At the voir dire, Officer Melia testified that the defendant was under arrest at the time he made the statements, that Trooper Cummings had advised him of his Miranda rights, that Cummings had "asked him if he understood his rights and the defendant stated yes." Officer Melia was then asked, "[W]ere you interrogating the defendant at that time?" He answered, "[Y]es, I talked to him briefly." When asked about what, he responded, "I had asked him whose stuff it was."

Trooper Cummings was the second witness at the voir dire. He testified that after the police had forced the door open, the defendant ran toward the bathroom. Cummings confronted him there and advised him of his rights from a card. When asked on cross-examination what the defendant did after the card was read to him, Cummings' answer was, "I believe I searched his clothes and gave him his clothes to put on."

The last witness at the voir dire was the defendant. He stated that he had not been given any warnings, that he did not really recall, but he was sure that the police had asked him some questions. He testified, on cross-examination, that there were a "bunch of people," including the prosecuting attorney (see notes 2 and 6, *infra*), asking all kinds of questions, that "there was a lot of confusion," and that "there were seven, eight of them, guns drawn. I was on the floor with no clothes on. They put handcuffs on me with no clothes on . . . ." The defendant also stated that Trooper Cummings was holding a gun in his hand, not a card, and that Cummings had the gun in his, the defendant's, mouth.

After defense counsel argued that there had been no intelligent waiver and referred to the defendant's testimony about the gun, the district attorney stated, "There is no testimony from the police that any gun was pressed to the defendant's head at the time he was being advised of his rights, and I suggested that the testimony of the defendant is tantamount to an outright lie." The judge ruled, "I find

that he was fully advised of his rights, so-called Miranda warnings, and that he made a knowing, willing and freely voluntary waiver of those rights in the conversation he had immediately following that." The judge reserved the right to make specific findings "if necessary or appropriate" at a later time. We note that he should have done so at the time of the voir dire or before the end of the trial. *Commonwealth* v. *Garcia*, 379 Mass. 422, 428 (1980).

b. *Evidence at trial.* Subsequent to the judge's ruling, the jury were brought back into the courtroom, and Officer Melia testified to the following. After finding the narcotics, and after the defendant had been advised of his rights, he had a conversation with the defendant in which the latter stated that the narcotics belonged to him, and not to the sleeping woman, and that the cocaine "should come back a strong seventy-five percent."[1] Cross-examination disclosed that six police officers had entered the motel room (by force) and that an assistant district attorney[2] had arrived "a few minutes" later. The Commonwealth's second witness, Trooper Cummings, confirmed that the defendant had stated that the drugs were all his.

On cross-examination, the evidence which raised the question of the voluntariness of the defendant's statements was elicited. Trooper Cummings testified that he had had his gun drawn when entering the room, that when he confronted the defendant who was naked, the gun was "probably right in his face," and "towards his mouth," and that Cummings told the defendant, "You are under arrest." When asked when he gave the defendant Miranda warnings, Trooper Cummings answered that he told the defendant to come out of the bathroom. "I said, 'Lie face down on the floor, okay? Put your hands behind your back'. At that time, I holstered my revolver, handcuffed him, got my identification, took my Miranda warning card out of it and

---

[1] Almost the exact figure shown by subsequent chemical analysis.

[2] The prosecuting attorney in this case.

read the warnings to Mr. Collins."[3] When asked how long the defendant remained on the floor naked with his hands cuffed behind him, Cummings stated, "Approximately fifteen minutes." He also testified that the defendant was not a threat to anyone at that time. Although asked, Cummings gave no reason why the defendant was kept naked for so long a period. It is apparent that the defendant was interrogated and made his incriminating statements during this fifteen minute interval.

c. *Discussion of legal issues.* The testimony of Trooper Cummings, which in large part corroborated the testimony of the defendant at the voir dire, if believed, evidences a striking disregard of Miranda's requirement "that police procedures must scrupulously respect the suspect's free choices . . . ." *Commonwealth* v. *Garcia,* 379 Mass. at 431, and also raises a substantial question as to the voluntariness of the defendant's statements (and the waiver) in the traditional due process sense. See *Miranda* v. *Arizona,* 384 U.S. 436, 457 (1966), and also at 511, 524 (Harlan, J. dissenting); *Michigan* v. *Tucker,* 417 U.S. 433, 442-443 (1974). See also *Commonwealth* v. *Garcia, supra* at 427-428.

The coercive effect of being nude[4] during custodial interrogation is well settled. In *Bram* v. *United States,* 168 U.S. 532, 561-563 (1897), the Supreme Court emphasized that Bram, when "stripped of his clothing, was interrogated by the officer, who was thus . . . exercising complete authority and control over the person he was interrogating." His nudity was a critical factor in the "totality of circumstances"[5] leading to the conclusion that his statement

---

[3] Although Trooper Cummings testified that he holstered his gun after the defendant was prone, it is by no means evident that the defendant knew he was no longer under the gun.

[4] See the prosecutor's remark in *Malinski* v. *New York,* 324 U.S. 401, 407 (1945), "Why this talk about being undressed? Of course, they had a right to undress him for bullet scars, and keep the clothes off him . . . That is some more psychology . . . humiliate him there for a while . . . ."

[5] A defendant's statements are voluntary if they are "made freely and voluntarily when considering the 'totality of the circumstances' in which they [are] made". *Commonwealth* v. *Garcia,* 379 Mass. at 428, citing

was involuntary. See *Malinski* v. *New York*, 324 U.S. 401, 405 (1945) (if the confession is a product of persistent questioning while the defendant is stripped and naked, it is clearly involuntary); *Culombe* v. *Connecticut*, 367 U.S. 568, 622 (1961) ("keeping of prisoners unclothed . . . for long periods during questioning" characterized as an "obvious crude device" of coercion). See also Model Code of Pre-Arraignment Procedure, commentary to § 140.3, at 352, n.1 (1975) ("being unclothed during interrogation" is a form of prohibited physical harassment). Although there is a difference between a defendant's being stripped by the police and being found nude, there is nothing in the testimony of the police in this case justifying the failure to give the defendant his clothes to put on as soon as possible.

While there was testimony *at trial* that the Miranda requirements were not followed (let alone "scrupulously" observed), at the time of the *voir dire* hearing there was evidence, primarily from Officer Melia, supporting the judge's ruling. *Commonwealth* v. *Johnson*, 3 Mass. App. Ct. 226, 230 (1975). *Commonwealth* v. *Collins*, 9 Mass. App. Ct. 915 (1980) and cases cited. The defendant did not move to strike his statements or seek a new voir dire after Trooper Cummings' testimony. Thus, his claim that such testimony shows that the judge's ruling was erroneous runs counter to the rule that we may not use subsequent evidence in deciding the correctness of an earlier ruling. *Commonwealth* v. *Roy*, 2 Mass. App. Ct. 14, 18 n.1 (1974). *Commonwealth* v. *Underwood*, 3 Mass. App. Ct. 522, 532 n. 9 (1975). We do not consider whether this is a "case where the record indicates circumstances justifying a departure from the rule," *Commonwealth* v. *Howard*, 4 Mass. App. Ct. 476, 482 (1976),[6] nor do we reach any claims having

---

*Procunier* v. *Atchley*, 400 U.S. 446, 453 (1971). See also *Commonwealth* v. *Cruz*, 373 Mass. 676, 688 (1977).

[6] If Trooper Cummings' testimony at trial as to the circumstances of the defendant's interrogation is correct, there are here troubling matters

constitutional dimension. See note 8, *infra.* We pass these questions because we conclude that the trial judge had an obligation under Massachusetts law[7] to have the question of voluntariness determined by the jury, even without any request by the defendant. This obligation arose when Trooper Cummings' testimony "making out a substantial claim of involuntariness was adduced at trial." *Harris I,* 371 Mass. at 470-471 & n.3. *Commonwealth* v. *Vick,* 381 Mass. at 45-46.

Apart from the requirements of *Miranda,* and apart from the constitutional mandate of *Jackson* v. *Denno,* 378 U.S. 368, 376-377 (1964),[8] "[t]he practice has long been established in this Commonwealth that, when statements

---

which would bear further investigation. If Officer Melia is accurate in stating that the prosecuting attorney entered the room "a few minutes" after the police, the prosecutor who urged the judge that there was "clearly a knowing intelligent waiver," may have been present at the time the defendant was given his Miranda warnings and questioned. We also note that it was through no fault of the defendant that the testimony was first elicited at trial and not at the voir dire hearing. The defendant's testimony at the voir dire hearing raised the question of coercion but was not believed. Although defense counsel had asked questions of Trooper Cummings at the voir dire hearing similar to those he asked at trial, it was only at trial that the defendant's earlier voir dire testimony was corroborated. In fairness to Trooper Cummings, we point out that the voir dire hearing was somewhat hurried, and we do not infer that the later evidence was purposely withheld by him during the voir dire. However, because of the unusual circumstances concerning the prosecutor and the disharmony of the testimony at the voir dire hearing and at the trial, we think the defendant will be free on retrial to make a motion to suppress his statements and obtain a new hearing thereon. Cf. *Commonwealth* v. *Johnston,* 373 Mass. 21, 23 (1977).

[7] In reaching this result, we observe that the trial judge did not have the benefit of *Commonwealth* v. *Vick,* 381 Mass. 43 (1980) , upon which we heavily rely.

[8] *Wainwright* v. *Sykes,* 433 U.S. 72, 86 (1977), a habeas corpus proceeding, held that the hearing requirements of *Jackson* v. *Denno, supra,* were not constitutionally mandated in the absence of "some contemporaneous challenge to the use of the confession." In *Wainwright,* at no time before or during the trial was the admissibility of any of the defendant's statements challenged on the ground that he had not understood the

amounting to a confession are offered in evidence, the question whether they were voluntary is to be decided at a preliminary hearing by the presiding judge in the absence of the jury. If he is satisfied that they are voluntary, they are admissible; otherwise, they should be excluded. If the judge decides that they are admissible, he should then instruct the jury not to consider the confession if, upon the whole evidence in the case, they are satisfied that it was not the voluntary act of the defendant." *Commonwealth* v. *Garcia*, 379 Mass. at 432, quoting from *Commonwealth* v. *Marshall*, 338 Mass. 460, 461-462 (1959). This two-pronged determination of voluntariness, known as the "humane practice," is required even in the absence of a request by counsel. *Harris I*, 371 Mass. at 472-473. For a full fledged confession both prongs are needed. Submission to the jury on proper instructions is not enough, *Harris* v. *Commonwealth*, 371 Mass. 478, 480-481 (1976) (*Harris II*), nor does an express ruling by the trial judge suffice. *Commonwealth* v. *Cole*, 380 Mass. 30, 39-41 (1980). Moreover, the trial judge has a duty, sua sponte, to hold a voir dire once substantial evidence of coercion appears even if the confession was previously properly admitted. See *Harris I*, 371 Mass. at 473; *Commonwealth* v. *Masskow*, 362 Mass. 662, 667 (1972); *Commonwealth* v. *Brady*, 380 Mass. 44, 50-51 (1980); *Commonwealth* v. *Vick*, 381 Mass. at 45-46.

Although it is not fully settled that the foregoing safeguards which are applicable to a full fledged confession are "required for inculpatory statements which fall short of a confession", *Commonwealth* v. *Vick*, 381 Mass. at 45; *Commonwealth* v. *Garcia*, 379 Mass at 432-434, and au-

Miranda warnings. *Id.* at 75. Since we are reversing on nonconstitutional grounds, we do not consider any questions having constitutional import, including the question whether in the circumstances of this case, an additional challenge was required by the defendant. See *United States* v. *Powe*, 591 F.2d 833, 847, text accompanying n. 49 (D.C. Cir. 1978). Cf. *Collins* v. *Auger*, 577 F.2d 1107, 1109, (8th Cir. 1978), cert. denied, 439 U.S. 1133 (1979).

thorities cited,[9] the Supreme Judicial Court in *Commonwealth* v. *Vick, supra* at 45-46, held that where a substantial claim of involuntariness based on insanity was raised at trial, the second prong of the "humane practice" was applicable even though the incriminating statements did not amount to a full fledged confession. The court imposed upon the judge the duty, even in the absence of a request, to submit the question of voluntariness to the jury on proper instructions.

Here the judge did not, as required, instruct the jury to disregard the statements if they found them to be involuntary. See *Commonwealth* v. *Marshall*, 338 Mass. 460, 461-462 (1959); *Commonwealth* v. *Cole*, 380 Mass. at 40. See also *Commonwealth* v. *Garcia*, 379 Mass. at 443-444, for a proper charge on voluntariness. Compare *Commonwealth* v. *Chung*, 378 Mass. 451, 457-460 (1979). He merely told the jury to consider voluntariness in determining what weight the statements were to receive. We hold that here, as in *Vick*, the failure of the trial judge to instruct properly on the issue of voluntariness constitutes reversible error.[10] A new trial is required.

While it may be thought that jury consideration of the question of insanity is of special significance, see *Commonwealth* v. *Chung*, 378 Mass. at 459-460, there is no indication that *Vick* was based on such grounds. In any event, there are in this case considerations as compelling as those in *Vick* for applying the second prong of the "humane practice."

---

[9] See also Developments in the Law, Confessions, 79 Harv. L. Rev. 935, 1030-1036 (1966), urging the arbitrariness of the distinction; 3 Wigmore, Evidence § 821(b), at 322-328 (Chadbourn rev. 1970).

[10] As did the court in *Vick*, we pass the question whether the judge on his own motion should have held a new voir dire. *Id.* at 45-46. In any event, in certain cases, and particularly where a question of the voluntariness of a defendant's statement is involved, it may be advisable to hold a second voir dire hearing to inquire into discrepancies between testimony given at the first voir dire hearing and testimony given at trial. See *Commonwealth* v. *Navarro*, 2 Mass. App. Ct. 214, 217 (1974).

We note first that the statement that all the narcotics found in the motel room belonged to the defendant was overwhelmingly incriminating and was bound to have on the jury the "almost conclusive effect" of a confession, *Harris I*, 371 Mass. at 473. Possession of Class B substances is, in itself, an offense under G. L. c. 94C, § 34, and since it was stipulated that the drugs found in the hotel room were Class B substances, the defendant's statement, when looked at in light of the judge's instructions on possession, was tantamount to his confessing to the lesser included offense. Once the defendant's admission that the drugs were his was introduced at trial, the finding by the jury of possession was a foregone conclusion.

In addition, "[n]o cases require more careful scrutiny than those of disclosures made by a party under arrest to the officer who has him in custody . . . ." *Commonwealth* v. *Curtis*, 97 Mass. 574, 578 (1867). Statements alleged to have been induced by physical or mental coercion during custodial interrogation deserve special attention. See Leach & Liacos, Massachusetts Evidence (4th ed. 1967), where the practice of affording lesser safeguards to admissions than to confessions was said to be of "dubious validity," at least where an admission is made "while the defendant is in custody of the police." *Id.* at 230. We do not distinguish between direct confessions and admissions for purposes of Miranda warnings and waivers, *Miranda*, 384 U.S. at 476; *Commonwealth* v. *Garcia*, 379 Mass. at 431, where such scrupulous care is taken to prevent any inference of police influence.[11] It seems anomalous that in applying our "humane practice" in cases where there is evidence of blatent police coercion, we should distinguish between degrees of incrimination. Cf. *Brown* v. *Mississippi*, 297 U.S. 278, 285 (1936). Cf. also *Commonwealth* v. *Mahnke*, 368 Mass. 662, 718-719 (1975) (Kaplan, J., dissenting), cert. denied, 425 U.S. 959 (1976). The "fundamental unfairness" in the

---

[11] See, for example, *Commonwealth* v. *Brant*, 380 Mass. 876, 883, cert. denied, 449 U.S. 1004 (1980).

use of coerced confessions, see *Harris I*, 371 Mass. at 468, applies with equal force to statements produced by police tactics which fall short of a confession, but which have the "powerful probative" or "almost conclusive effect of a confession." *Harris I*, 371 Mass. at 472 & at 473. See also *Bram* v. *United States*, 168 U.S. at 541-542, 562; *Ashcraft* v. *Tennessee*, 327 U.S. 274, 278-279 (1946).

2. *Admissibility of conversations of the defendant overheard by the police*. The defendant also contends that his statements obtained by police eavesdropping should be excluded. We consider this issue as it is likely to recur on retrial. With the consent of the motel manager, police officers stationed themselves in a room adjoining the one occupied by the defendant. From this listening post, by placing their ears against a door connecting the rooms, they overheard conversations including those of the defendant. Although the defendant's statements were not offered during the Commonwealth's case in chief, but were only offered in rebuttal, and, probably, as a result of the defendant's trial strategy, we do not consider their admissibility on that ground, see *Commonwealth* v. *Williams*, 379 Mass. 600, 605-606 (1980), as the Commonwealth may, on retrial, wish to introduce the statements in its direct case.

Relying on *Katz* v. *United States*, 389 U.S. 347, 361 (1967), the defendant urges that the activities of the police violated the privacy "upon which he justifiably relied" when they listened at the connecting door. The question, of course, is whether "the expectation of privacy that the defendant might have felt was . . . reasonable in the constitutional sense." *Commonwealth* v. *Frazer*, 10 Mass. App. Ct. 429, 432 (1980).

The defendant would have us distinguish between conversations loud enough to be heard without "ears at the keyhole" of an adjoining motel room and the conversations overheard here. He cites no cases where such a distinction has been favorably entertained. To the contrary, the cases we have found dealing with ears at the walls, or doors, of

adjoining hotel or motel rooms, all refuse to "divide the listening room into privileged or burdened areas, and the conversation into degrees of audibility." *United States* v. *Fisch,* 474 F.2d 1071, 1077 (9th Cir.), cert. denied, 412 U.S. 921 (1973). *United States* v. *Jackson,* 588 F.2d 1046, 1054 (5th Cir.), cert. denied, 442 U.S. 941 (1979). *United States* v. *Agapito,* 620 F.2d 324, 330-331 (2d Cir.), cert. denied, 449 U.S. 834 (1980). *State* v. *Moses,* 367 So. 2d 800, 803 (La. 1979). *State* v. *Day,* 50 Ohio App. 2d 315, 321-322 (1976). The defendant's claim that his subjective expectation of privacy is "one that society is prepared to recognize as 'reasonable,'" *Katz* v. *United States,* 389 U.S. at 361 (Harlan, J., concurring), has been uniformly rejected by these cases. Compare the expectation of privacy not so rejected in *Stoner* v. *California,* 376 U.S. 483, 488-489 (1964).

As stated in *United States* v. *Agapito, supra* at 332:

> "In view of the 'open, public, and shared atmosphere', together with the 'nearness' and transience of one's neighbors in a hotel room (citation omitted), we believe that an occupant of a hotel room with connecting doors cannot reasonably assume that his conversations — even those spoken in a normal tone — never will be overheard by others in an adjoining room. Sound travels. Often it will travel to an adjoining room. And when the adjoining room has a connecting door, as in this case, sound may well be expected to travel from one adjoining room to another.
>
> "It may not have been gentlemanly of the agents to press their ears against the door in order to overhear conversations. But the same can be said of many other constitutionally permissible investigatory techniques (citations omitted) . . . The specific question before us is whether the agents violated the Fourth Amendment. We hold that they did not."

Or, as put in *State* v. *Day, supra* at 320-321:

"We do not believe that the occupants of such rooms have any right to expect that their normal conversations may not be overheard by listening ears in the next room, or that the privacy of their conversation will be constitutionally protected from such purposeful or inadvertent auditors . . . If one zealously treasures the privacy of his utterances from auditing by the curious, the prurient, or the official, common experience would dictate avoidance of the motel room."

This view is consonant with the distinction made in the dissenting opinion of Mr. Justice Brennan in *Lopez* v. *United States*, 373 U.S. 427, 465 (1963):

"[T]here is a qualitative difference between electronic surveillance . . . and conventional police strategems such as eavesdropping and disguise. The latter do not so seriously intrude upon the right of privacy. The risk of being overheard by an eavesdropper or betrayed by an informer or deceived as to the identity of one with whom one deals is probably inherent in the conditions of human society. It is the kind of risk we necessarily assume whenever we speak."

This similarity of opinion is not lightly to be dismissed, and we decline to do so. See *Commonwealth* v. *Dinnall*, 366 Mass. 165, 166-167 (1974). Compare *Commonwealth* v. *Hall*, 366 Mass. 790, 795 (1975). But see Amsterdam, Perspectives on the Fourth Amendment, 58 Minn. L. Rev., 349, 402-403 (1974). We hold that the overheard statements are admissible.

3. *Disclosure of identity of informer*. Since a new trial is required, we need not consider the defendant's contentions that the judge committed error in not requiring the Commonwealth to disclose the identity of the informer. As indicated in *Roviaro* v. *United States*, 353 U.S. 53, 62 (1957), there is "no fixed rule with respect to disclosure . . . The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's

right to prepare his defense." The defendant claims that the testimony of the informer was needed to show that the drugs did not belong to the defendant. Whether at a new trial the informer's testimony will be "relevant and helpful to the defense", *Roviaro, supra* at 60-61; *Commonwealth* v. *Ennis,* 1 Mass. App. Ct. 499, 504 (1973), is a question which is to be determined by the trial judge upon a showing of need by the defendant. That question may, in large part, depend on the overheard statements which the Commonwealth may choose to introduce in evidence. We note that if the defendant can show that the "informer may be able to give testimony necessary to a fair determination of the issue of guilt or innocence", Rule 509(c)(2) of the proposed Massachusetts Rules of Evidence sanctions in camera proceedings to protect and balance the interests involved. In camera hearings for this purpose are sanctioned to an even greater degree by the Uniform Rules of Evidence, rule 509(c)(2), where the testimony need only be relevant rather than necessary. The practice of in camera proceedings is recognized in the Federal courts despite the absence of a specific rule governing such a procedure. See, e.g., *United States* v. *Day,* 384 F.2d, 464, 467 (3d Cir. 1967), McLaughlin, J., concurring, approved in *United States* v. *Jackson,* 384 F.2d 825, 827 (3d Cir. 1967); *United States* v. *Hurse,* 453 F.2d, 128, 131 (8th Cir. 1971), cert. denied, 414 U.S. 908 (1973); *United States* v. *Soles,* 482 F.2d 105, 110 n.8 (2d Cir.), cert. denied, 414 U.S. 1027 (1973); *United States* v. *Anderson,* 509 F.2d 724, 728-729 (9th Cir.), cert. denied, 420 U.S. 910 (1975); *United States* v. *Doe,* 525 F.2d 878, 880 (5th Cir. 1976).

We do not suggest that an in camera proceeding will be needed or that one was required in the first trial. Its advisability will depend on the defendant's showing at a new trial. We merely point out that the judge may decide to follow such a procedure and recognize that he has inherent power to do so.

4. *Waiver of trial by jury.* The defendant's contention that the judge erred in refusing to accept his waiver of a jury

trial is without merit.  General Laws c. 263, § 6, as appearing in St. 1979, c. 344, § 19, permits, as does Mass.R. Crim.P. 19(a), 378 Mass. 888 (1979), a judge to refuse to accept a defendant's waiver of a trial by jury.  In this case, the judge's conclusion that certain pretrial matters which came to his attention, including statements of defense counsel, would unfairly prejudice, at least in appearance, the rights of the defendant is a "good and sufficient reason" within the meaning of Mass.R.Crim.P. 19(a). The judge was not required to recuse himself.  See *Commonwealth* v. *Williams*, 8 Mass. App. Ct. 283, 288 (1979).

For the reasons set forth in part 1 of this opinion, the judgments are reversed and the verdicts set aside.

*So ordered.*