COMMONWEALTH *vs.* RICHARD ALLAN JOHNSTON.

Middlesex.    April 5, 1977. — July 5, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & ABRAMS, JJ.

*Evidence,* Admissions and confessions.  *Constitutional Law,* Admissions
    and confessions, Waiver of constitutional rights.  *Practice, Criminal,*
    Voluntariness of confession.  *Waiver.  Insanity.*

The judge at a murder trial erred in excluding psychiatric testimony
    as to whether the defendant's confession was the product of a ra-
    tional mind.  [23-26]

INDICTMENT found and returned in the Superior Court
on March 10, 1975.

The case was tried before *Zarrow,* J.

*John P. White, Jr.* (*Christopher Dye* with him) for the
defendant.

*James W. Sahakian,* Assistant District Attorney, for the
Commonwealth.

BRAUCHER, J.    The defendant appeals his conviction of
murder in the first degree. At trial he offered the testimony
of a psychiatrist as to whether the defendant's confession
was the product of a rational mind, and the testimony was
excluded. We hold that the exclusion was error, and order
a new trial.

The Commonwealth presented evidence of the following
facts. The defendant, eighteen years old, drank brandy and
beer and smoked marihuana over a period of several hours
in the evening of January 14, 1975. About 1:30 A.M. on
January 15, he got into a fight outside a bar in Newton.
Friends drove him to his home, and during the drive he
said he wanted to "go back and get those kids." At his
home he went in and came back to the car with a .22 cali-
ber rifle. His friends tried to talk him out of "getting" the
"kids" and one friend invited him to "sleep it off" at his

house. About 1:50 A.M. that friend called a taxicab for the defendant who by that time had changed his mind about sleeping over. The victim, a cabdriver, drove the defendant to the P-1 level of the Holiday Inn in Newton. There the defendant shot the victim six times, killing him, and then drove the taxicab to his home. The gun was a single-shot, bolt-action rifle, and had to be unloaded and reloaded each time it was fired. It probably took several minutes for the victim to become unconscious.

In response to a telephone call from the defendant's mother, two police officers arrived at his home about 2:30 A.M. As they entered they saw the defendant shaking his father and saying, "That . . . movie, that . . . movie. Why did you let me see it? — Death Wish. He is dead. He is dead. I know he is dead. I shot him in the head. He is bleeding from the mouth. He is dead. P-1, P-1, Holiday Inn." The police handcuffed the defendant and seated him on a kitchen chair. He yelled, "Don't send me to Bridgewater. Nothing but a bunch of queers there." The defendant's father showed the police a .22 caliber rifle which had been recently fired, and they found eleven live bullets and six spent shells in the pocket of the defendant's jacket.

After the defendant was taken to the police station and was given Miranda warnings, he gave an account of the evening's events substantially in harmony with the foregoing. The defendant was upset, appeared to have been drinking, and was perhaps under the influence of alcohol. There was expert testimony, based on blood alcohol tests made on the morning of January 15, that the defendant was intoxicated. A psychiatrist testified for the defendant that the defendant was suffering from chronic paranoid schizophrenia, "megalomanic type," and that he did not have the substantial capacity to conform his conduct to the requirements of the law. In rebuttal two psychiatrists testified for the Commonwealth that the defendant had the capacity to appreciate the wrongfulness of his conduct and to conform his conduct with the requirements of the law.

In the view we take, we need consider only the judge's refusal to permit the defendant's psychiatrist to testify to

his opinion whether the defendant's statements to the police were the product of a rational mind. But consideration of that issue requires examination of the rulings made on the defendant's admissions and confession.

1. *The pre-trial motion to suppress.* Before trial the defendant moved to suppress all his statements, admissions, and confessions made on or about January 15 and 16, 1975. After an extensive hearing, the motion judge made detailed findings of fact and rulings of law. The judge concluded that the arrest of the defendant was made on probable cause, and that the statements volunteered at his home prior to police interrogation were the product of a rational intellect and free will, but that it was not sufficiently shown that the defendant clearly understood and waived his constitutional rights in the police cruiser on the way to the police station. At the police station Miranda warnings were given at least twice; although the defendant had consumed a considerable amount of alcohol, he was coherent and articulate, made logical and appropriate responses, and made a knowing and intelligent waiver. Accordingly, the judge suppressed a statement made by the defendant in the police cruiser, but ruled that the volunteered statements made at his home and the confession given at the police station were admissible.

2. *Rulings at trial.* The trial judge admitted in evidence the defendant's statements made in his kitchen before any police questions, but excluded evidence of kitchen statements made in response to police questions. He was concerned that the latter statements resulted from "an interrogation initiated by the police without the Miranda warnings." The police station confession, however, was admitted in evidence. We assume for present purposes, without deciding, that those rulings were correct. In view of the disharmony between the rulings of the motion judge and those of the trial judge, however, we think the defendant will be free, in the event of a new trial, to make a new motion to suppress and to obtain a new hearing thereon.

The defendant called a psychiatrist as a witness and asked a hypothetical question calculated to elicit the doc-

tor's opinion as to whether the station house confession was "the product of a rational mind." No offer of proof was made, but the doctor had given a negative answer in the suppression hearing. The judge recognized that if he determined that a confession was voluntary, he should then leave the same issue to the jury. But he ruled that the issue whether there was an intelligent waiver of constitutional rights was for the judge to the exclusion of the jury. He therefore excluded the evidence.

In submitting the case to the jury, however, the judge said, "Any statement given by a defendant to the police has to be a voluntary one, and you must determine whether or not it was voluntary or involuntary. A confession is involuntary unless it is the product of a rational intellect and a free will. . . . Then, of course, if you find that [the defendant's will was overborne], you should disregard that statement."

3. *The error.* Under our practice the voluntariness of a confession is to be determined by the judge in the first instance. If he rules that a confession is voluntary, he submits the same question to the jury, instructing them not to consider the confession if they find it not to be voluntary. The judicial finding is required by the Federal Constitution; the subsequent jury determination is not, but is a "humane practice" well established in this Commonwealth. See *Commonwealth* v. *Harris*, 371 Mass. 462, 467-474 (1976), and cases cited.

The mental condition of the defendant must be considered in determining whether a confession is "the product of any meaningful act of volition." *Commonwealth* v. *Masskow*, 362 Mass. 662, 666 (1972), quoting from *Blackburn* v. *Alabama*, 361 U.S. 199, 211 (1960). *Eisen* v. *Picard*, 452 F.2d 860, 863-865 (1st Cir. 1971), cert. denied, 406 U.S. 950 (1972). Cf. *Commonwealth* v. *Bys*, 370 Mass. 350, 363-365 (1976) (mentally retarded defendant); *Commonwealth* v. *Daniels*, 366 Mass. 601, 609 (1975) (same). The Appeals Court has held that issues as to compliance with Miranda requirements need not be submitted to the jury. *Commonwealth* v. *Polidoro*, 4 Mass. App. Ct. 794

(1976). Cf. *Commonwealth* v. *Hosey*, 368 Mass. 571, 577-579 (1975) (defendant arrested for drunkenness). It has been suggested elsewhere that such submission is undesirable in view of the complexity of the requirements. See *People* v. *Sanchez*, 65 Cal. 2d 814 (1967), vacated on other grounds, 70 Cal. 2d 562, cert. dismissed, 394 U.S. 1025 (1969); *State* v. *Hampton*, 61 N.J. 250, 269 (1972). Cf. *State* v. *Perry*, 14 Ohio St. 2d 256, 265-266 (1968). But in a proper case the jury may consider such compliance as going to the weight of the defendant's statements. See 2 C.A. Wright, Federal Practice and Procedure § 414 (1969). Cf. *Commonwealth* v. *Valcourt*, 333 Mass. 706, 711 (1956). We think the judge was correct in submitting to the jury the question whether the confession was the product of a rational intellect as part of the issue of voluntariness. It follows that he erred in excluding psychiatric testimony bearing directly on that question. *Commonwealth* v. *Jones*, 459 Pa. 62, 67-68 (1974). *People* v. *Joyce*, 233 N.Y. 61, 69-71 (1922). Cf. *Lokos* v. *Capps*, 528 F.2d 576, 578 (5th Cir. 1976).

4. *Prejudice.* The Commonwealth argues that the exclusion of the evidence in question was harmless beyond a reasonable doubt in view of other testimony supporting the defense of insanity. The testimony in question bore on the voluntariness of the defendant's confession, and it is rare that the erroneous consideration of a confession is treated as harmless error. In the present case, however, the evidence that the defendant killed the victim was overwhelming, and error affecting only that issue might be harmless. Cf. *Commonwealth* v. *Masskow*, 362 Mass. 662, 668 (1972).

The confession and the question whether it was the product of a rational mind also bore on the issue of insanity. Psychiatrists called by the Commonwealth were permitted to analyze the confession to show that the defendant had substantial capacity to appreciate the wrongfulness of his conduct. But the psychiatrist called by the defendant was not permitted to give testimony about the confession which might have led the jury to disregard it.

The excluded testimony might thus have lent support to his conclusion that the defendant was unable to conform his conduct to the requirements of the law. Since the sanity of the defendant was the principal issue tried, it cannot be said that the error in excluding this testimony was harmless. Accordingly, the case must be remanded to the Superior Court for a new trial.

*Judgment reversed.*

*Verdict set aside.*