COMMONWEALTH vs. JUNIOR U. CHUNG.

Suffolk. April 3, 1979. — July 5, 1979.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, LIACOS, & ABRAMS, JJ.

*Evidence,* Admissions and Confessions. *Constitutional Law,* Admissions and confessions, Waiver of constitutional rights. *Waiver. Practice, Criminal,* Voluntariness of confession. *Insanity.*

Where there was credible evidence introduced at a criminal trial that the defendant was insane at the time he made a confession to the police, the judge erred in failing to submit to the jury the question whether the confession was the product of a rational intellect. [455]

INDICTMENTS found and returned in the Superior Court on February 14, 1974.

The cases were tried before *Tamburello,* J.

*Steven J. Brooks* for the defendant.

*James M. McDonough,* Assistant District Attorney (*Michael J. Traft,* Assistant District Attorney, with him) for the Commonwealth.

LIACOS, J. Notwithstanding his defense of lack of criminal responsibility, the defendant was found guilty by a jury on indictments charging murder in the first degree, unlawfully carrying a firearm, larceny, assault and battery by means of a dangerous weapon, assault with intent to murder, and armed robbery. He was sentenced to life imprisonment on the conviction of murder in the first degree. The larceny conviction was placed on file. Other sentences on the related indictments were made to run concurrently with the sentence on the murder indictment, except for the armed robbery as to which a sentence of ten to twelve years was imposed from and after the sentence on the murder indictment. The defendant's appeal was ordered dismissed in May, 1977, but was reinstated by a single justice of this court in October, 1978.

That appeal is now before us under the provisions of G. L. c. 278, §§ 33A-33G. We reverse.

The defendant claims reversible error on three grounds. Because we agree with the defendant's second claim, that the judge erred in his instruction to the jury with respect to the issue of the voluntariness of the defendant's confession, we need not expound on the other issues argued.[1]

We state the pertinent facts. The testimony presented at trial as to the commission of the alleged criminal acts by the defendant was essentially undisputed. At about 5 P.M. on February 8, 1974, the defendant entered Baker's Shoe Store on Winter Street in Boston, and, brandishing a revolver,[2] demanded money from Shirley Innis, a store employee tending the cash register. After seizing some money, the defendant was confronted by another employee, Stephen Linton, and he proceeded to chase Linton out of the store. Linton ran down Winter Street and fell to the ground. The defendant struck him with the pistol, and ran into the Winter Street MBTA subway station. Shortly thereafter, Boston police officer John Murphy,

---

[1] Since the issue referred to in the defendant's first assignment of error might be raised again at a new trial, however, we address it briefly. The defendant claims that the trial judge erred in permitting the Commonwealth to call as a witness Evelyn Delorey, because Mrs. Delorey's testimony was irrelevant and cumulative, and because her status, as wife of the victim with whose murder the defendant was charged, rendered her testimony irreparably prejudicial to the defendant's case. We do not view the subject matter of the witness' testimony as irrelevant or unduly repetitive of the previous testimony, nor do we view the impact of her relationship to the victim as impermissibly prejudicial. See Commonwealth v. Nassar, 354 Mass. 249, 257-258 (1968), cert. denied, 393 U.S. 1039 (1969). The defendant's additional claim that the witness lapsed into an emotional outburst which was prejudicial to him is one we need not consider here; assuming, arguendo, the validity of the defendant's arguments on this point, we decline to speculate as to the possibility of the recurrence of such behavior should she testify at a new trial.

[2] The weapon apparently used by the defendant during the robbery, later recovered in the room where he was apprehended, was a .22 caliber blank pistol.

and Henry J. Delorey, an off duty MBTA employee, pur-
sued the defendant into the station with Linton behind
them. A struggle followed. One of the men struck the
defendant with a nightstick. During the scuffle, Mur-
phy's revolver dropped to the floor, and the defendant
picked it up. He fired several rounds at Delorey and Mur-
phy, and struck both of them. He then left the scene, and
was arrested at his home shortly thereafter. As a result
of wounds received, Delorey died and Murphy suffered
severe cerebral damage.

As part of its case-in-chief, the prosecution sought to
introduce in evidence a tape recording of an inculpatory
statement made by the defendant three hours after the
crimes were committed. One of the prosecution's stated
reasons for playing the tape was that "the way the de-
fendant speaks is relevant and material, the way he re-
sponds is relevant and material to the issue that will be
raised, to wit, the psychiatric defense." Defense counsel
sought and was granted a voir dire without the presence
of the jury as to (1) whether the Miranda rights had been
read to the defendant, and (2) whether, in light of the
defendant's psychological condition, he validly waived
those rights. Because of a "logistical problem," however,
defense counsel was unable to produce at the voir dire,
psychiatric testimony with respect to the defendant's
mental condition at the time of the confession. At the
close of the voir dire, and before the jury were called back
into the court room, the judge determined that the proper
Miranda warnings had been given, that the defendant
had "freedom of choice" and the "rational intellect to
make the statement which he did," and that "there was
an intelligent, voluntary waiver."

Anticipating "significant psychiatric evidence on be-
half of the defendant," defense counsel requested an in-
struction, to be given after such evidence had been pre-
sented, which would direct the jury to consider the
defendant's mental condition at the time of the statement
with respect to the question of valid waiver. In response,

the judge said, "Of course, I will tell the jury at the end of the case that it's up to them to decide what the facts are, and I will give them all the law on the point."[3] The tape of the defendant's statement was then played before the jury.

The defendant relied entirely on the defense of insanity. Dr. Daniel M. Weiss, a psychiatrist and the key defense witness, testified that he first visited the defendant on February 15, 1974, and saw him on at least eight occasions prior to the trial. In Dr. Weiss's opinion, the defendant was suffering from a schizophrenic reaction of the paranoid type, severe and chronic, and this condition had been present in the defendant since before the commission of the crimes charged. More specifically, Dr. Weiss expressed the opinion that on February 8, 1974, as a product of mental disease, the defendant lacked substantial capacity to appreciate the criminality or wrongfulness of his acts, and lacked the ability to conform his conduct to the law. In corroboration, Dr. Eugene J. Balcanoff, court clinic psychiatrist for the Superior Court in Suffolk County, testified that he had examined the defendant in March and April of 1974, and that as of the interview of April 2, at least, it was his opinion that the defendant was "probably mentally ill, actively so."

In addition, the two sisters and the landlady of the defendant were called, each of whom testified to having

[3] The judge also stated, still outside the hearing of the jury: "When you bring in your witnesses, I don't know what they are going to say, but the jury is going to hear the whole thing, and when we get through with the case, I will tell the jury of the Miranda Warnings, ask them are they satisfied they were properly and fully given, are they satisfied of the man's intellect under the McHoul test. . . . I am not going to take this man's testimony conditionally, because two or three men might say later on that this man was in fact not sane. That is the ultimate question for the jury, and it is not for me." Defense counsel replied: "I have no objection your Honor, as long as your Honor has indicated that you will cover the subject in your Honor's charge."

THE JUDGE: "As far as God will let me do it, I will do as full a job as I can to protect the defendant and society."

witnessed irrational and bizarre behavior on the part of
the defendant on various occasions prior to the commis-
sion of the crimes alleged. In rebuttal, the Common-
wealth presented Dr. Leo Alexander who testified that in
his opinion, based primarily on two psychiatric examina-
tions occurring approximately seventeen and twenty-
four months after the commission of the crimes, the de-
fendant was not legally insane on February 8, 1974.[4]

We focus now on a particular segment of the trial
judge's instruction to the jury, for therein lies the error
requiring reversal of the convictions. After concluding
the general instructions, the judge discussed the Miranda
warnings. The judge stated: "The United States [Su-
preme] Court has held that if a person is taken into custo-
dy and had his freedom of access deprived or restrained
in any significant way, certain procedural safeguards
must be taken before the police may interrogate the per-
son." After enumerating the warnings which are re-
quired to be given, the judge continued: "If the person has
been informed of the foregoing rights and makes an intel-
ligent, voluntary, and knowing waiver, he may then be
questioned by the police." The judge then recapitulated
some of the testimony of the police officers who had ad-
vised the defendant of his constitutional rights prior to
his taped confession. The judge next remarked: "Then he
gave the rights as you will recollect that he gave them
according to your memory. So the law regarding Miran-
da, he was giving the Miranda Warning, once according
to the evidence in the bathroom and the apartment
house, and once in the police station when he gave a
statement that was recorded. You heard the tape record-
ing. I have read to you what the Miranda Warnings re-
quire, and you have heard both police testify about the

---

[4] In substance, Dr. Alexander's principal diagnosis of the defendant
included personality disorder with emotional instability, impulsivity,
and depressive mood swings, with projected fantasy content; his sec-
ondary diagnosis included hysteria, alcoholism, and drug dependence.

warnings they gave. I have read to you about the waiver, and so forth, and I will now leave that to your own recollection." These instructions as given, lacking further elaboration, were erroneous.

It is the long-established practice in this Commonwealth that the voluntariness of a confession is first to be determined by the judge, absent the jury. Only if the judge finds a confession to be voluntary does he submit it to the jury, with the instruction that they may not consider it if they decide that it is involuntary. "The judicial finding is required by the Federal Constitution; the subsequent jury determination is not, but it is a 'humane practice' well established in this Commonwealth." *Commonwealth* v. *Johnston*, 373 Mass. 21, 24 (1977). See *Commonwealth* v. *Harris*, 371 Mass. 462, 467-474 (1976), and cases cited.

In determining whether a confession is "the product of any meaningful act of volition," *Commonwealth* v. *Masskow*, 362 Mass. 662, 666 (1972), quoting from *Blackburn* v. *Alabama*, 361 U.S. 199, 211 (1960),[5] we have become increasingly sensitive to consideration of the defendant's mental condition. See *Commonwealth* v. *Johnston, supra;*

---

[5] The Supreme Court (Warren, C.J.) remarked in *Blackburn* v. *Alabama*, 361 U.S. 199, 207 (1960): "Surely in the present stage of our civilization a most basic sense of justice is affronted by the spectacle of incarcerating a human being upon the basis of a statement he made while insane; and this judgment can without difficulty be articulated in terms of the unreliability of the confession, the lack of rational choice of the accused, or simply a strong conviction that our system of law enforcement should not operate so as to take advantage of a person in this fashion." See *Gladden* v. *Unsworth*, 396 F.2d 373, 380 (9th Cir. 1968), wherein the court stated: "[V]oluntariness is not necessarily established by proving that the confession was spontaneous or by proving the absence of an improper purpose on the part of the questioning officers. If by reason of mental illness, use of drugs, or extreme intoxication, the confession in fact could not be said to be the product of a rational intellect and a free will . . . it is not admissible and its reception in evidence constitutes a deprivation of due process." Cf. *Gibbs* v. *Warden, State Penitentiary*, 450 F. Supp. 242, 244 (M.D. Ga. 1978) ("a confession is inadmissible if it would not have been obtained but for the effects of the confessor's psychosis").

*Eisen* v. *Picard*, 452 F.2d 860, 863-865 (1st Cir. 1971), cert. denied, 406 U.S. 950 (1972); *United States* v. *Silva*, 418 F.2d 328, 330 (2d Cir. 1969). If the defendant comes forward with evidence of insanity at the time of his confession, the judge is obliged initially to determine whether the statements given were the "product of a rational intellect as part of the issue of voluntariness." *Johnston, supra* at 25. Should the judge admit the confession, and if credible evidence of insanity at the time of the confession is presented to the jury, our practice requires jury reconsideration as to the question of the defendant's rationality, likewise "as part of the issue of voluntariness."

This procedure was not followed in the case before us. As described above, a voir dire was held, in light of allegations of the defendant's insanity. The judge found that the proper Miranda warnings had been given, that the rights enumerated therein had been voluntarily waived, and that the defendant "had the rational intellect to make the statement which he did."[6] The confession was admitted in evidence. Subsequent to its admission, the defendant introduced psychiatric testimony as to his insanity prior to, during, and after the commission of the crimes. That evidence was certainly sufficient to raise the issue whether the defendant was insane at the time he purportedly waived his rights and gave the confession.[7]

---

[6] After trial, the judge filed the following written findings and ruling: "I find that the defendant was fully advised of his rights as required under *Miranda* v. *Arizona*, 384 U.S. 436 [1966]. I find that the defendant made an intelligent, voluntary and knowing waiver of his rights. I find there was volition as well as competency to make the statements, and that the statements were the product of a rational intellect."

[7] Although defense counsel did not produce psychiatric evidence as to the defendant's mental condition at the precise time of the confession, Dr. Weiss clearly testified as to both the defendant's chronic psychotic state and his legal insanity at the time of the crimes, a few hours prior to the confession. He also testified on cross-examination that the fact of the defendant's having given a detailed statement of the incident shortly after it occurred would not affect his diagnosis. This evidence was "obviously . . . pertinent to the voluntariness of the confession." *Lokos* v. *Capps*, 528 F.2d 576, 578 n.4 (5th Cir. 1976).

Under our "humane practice," the judge should have submitted to the jury the question whether the confession was the product of a rational intellect.[8]

The judge in this case did not instruct the jury clearly on their responsibility with regard to this issue. His only reference to the question of voluntariness of the confession, a reference tangental at best, involved his comments as to the Miranda warnings. The judge stated that once a person has been informed of his Miranda rights and makes an intelligent, voluntary, and knowing waiver, he may be questioned by the police. The judge noted that the defendant had indeed been questioned by the police. Finally, he remarked: "I have read to you about the waiver, and so forth, and I will now leave that to your own recollection." These comments did not adequately discharge the judge's duty to instruct the jury as to their role in determining the voluntariness of the confession. It is conceivable that the jury supposed the judge to be instructing them to make their own determination regarding the voluntariness of the defendant's waiver, as a component of their responsibility to decide on the over-all voluntariness of the confession.[9] It is at least as likely,

---

[8] Although the defendant neither objected nor excepted to the judge's failure properly to instruct the jury as to these questions, we think the issue is rightfully before us. At the voir dire, the defendant objected to the admission of the confession and asked the judge to instruct the jury, once psychiatric testimony had been presented, to consider the defendant's mental condition as it pertained to the voluntariness of his waiver of Miranda rights. In light of the extensive psychiatric evidence of involuntariness which was presented at trial, we think the judge had an independent obligation to instruct the jury to consider the voluntariness of the confession. See *Commonwealth* v. *Harris*, 371 Mass. 462 (1976); *Commonwealth* v. *Goulet*, 374 Mass. 404, 418 (1978).

[9] We have not explicitly spoken on whether contested issues regarding compliance with the Miranda requirements (including questions as to whether the warnings were given and whether the rights to remain silent and to obtain counsel were validly waived) should be submitted to the jury as relevant to their determination regarding the

however, that the jury understood the judge to mean that, since the police had questioned the defendant, and since knowing, intelligent, and voluntary waiver is a prerequisite to such questioning, the defendant had confessed voluntarily. Further, the jury might well have viewed this determination as conclusive.

While the failure of the judge to instruct the jury as to its role in determining the voluntariness of the confession was error, the improper consideration of the statement, in so far as it bore on the defendant's commission of the acts, might be treated as harmless, in light of the overwhelming evidence that the defendant committed those acts. See *Commonwealth* v. *Masskow, supra* at 668.[10] The question whether the waiver and the confession were the product of a rational mind, however, bore on the crucial issue of insanity as well. With respect to this issue, we cannot say that the judge's error was harmless. In his closing argument, the prosecutor referred explicitly to

over-all voluntariness of the confession. The defendant urges us to find in this context that, at the very least, waiver of the Miranda rights must be submitted to the jury. See, e.g., *Gainer* v. *State*, 144 Ga. App. 703 (1978); *State* v. *Pease*, 129 Vt. 70 (1970). We do not doubt that evidence bearing on whether warnings were given and rights were validly waived is "relevant in determining whether a confession is voluntary." *Commonwealth* v. *Valcourt*, 333 Mass. 706, 711 (1956). See *Coyote* v. *United States*, 380 F.2d 305, 310 (10th Cir.), cert. denied, 389 U.S. 992 (1967). However, we need not decide whether, as a general rule, such issues *must* be submitted to the jury as part of the voluntariness determination referred to in *Commonwealth* v. *Harris, supra*, since we reverse the convictions before us on the narrower basis set forth in this opinion. Suffice it to say, in light of the requirements of *Miranda* v. *Arizona*, 384 U.S. 436 (1966), and the cases delineating the "humane" Massachusetts practice, that the undefined relationship between the fact-finding roles of judge and jury has been a source of some procedural confusion and probably would benefit from clarification. See *Commonwealth* v. *Johnston*, 373 Mass. 21, 24-25 (1977); *State* v. *Hampton*, 61 N.J. 250 (1972). We do not view this case, however, as the appropriate vehicle through which to achieve this goal.

[10] We hasten to add, however, that "it is rare that the erroneous consideration of a confession is treated as harmless error." *Commonwealth* v. *Johnston, supra* at 25.

the taped statement as pertinent to the question of the defendant's sanity at the time he committed the acts.[11] The prosecutor urged the jury to regard the statement as evidence of sanity. We cannot say that the judge's charge did not have the effect of bolstering the prosecutor's contention. The pertinent portion of the instruction could have been understood to be an irrefutable factual finding, announced by the judge, as to the defendant's voluntary, rational waiver of his constitutional rights.[12] That portion of the charge may well have influenced the jury to decide that the confession was the product of a rational intellect. Ultimately, it may have tipped the scales against the insanity defense. Accordingly, the judgments are reversed, the verdicts are set aside, and the case is remanded to the Superior Court for a new trial.

*So ordered.*

---

[11] The prosecutor said: "More importantly, he was examined or interrogated by a Lieutenant Jerome McCallum, who testified here and authenticated a tape of his confession. Now, that tape was offered in evidence, it's an exhibit, and if you want you can play it, you can listen to it. If I could suggest, I suggest you do that. One, whether or not he admits that he did what he is charged with, and two, to make a judgment in your own minds as to the type of man and the type of mind at that particular time, maybe two or three hours after the shooting. Does he sound to you in that tape as though he is lacking substantial capacity to conform his conduct to the requirements of law? Does he sound in that tape as though he lacks the substantial ability to appreciate the criminality of his acts? Well, that's for you to say. So I ask that you consider that."

[12] We note that the judge here did not explicitly indicate that he had made a finding of voluntary waiver, although we think the jury could have so construed his remarks. We reiterate that the preferred practice for a trial judge is to refrain from informing the jury of his decisions as to issues bearing on the voluntariness of a confession. See *Harris* v. *Commonwealth*, 371 Mass. 478, 481 n.3 (1976). See also *United States* v. *Bear Killer*, 534 F.2d 1253, 1259 (8th Cir.), cert. denied, 429 U.S. 846 (1976). But see *Commonwealth* v. *White*, 353 Mass. 409, 418 (1967), cert. denied, 391 U.S. 968 (1968).