COMMONWEALTH vs. JAIRO VAZQUEZ.

Essex. April 7, 1982. — August 5, 1982.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Practice, Criminal,* Motion to suppress, Voluntariness of statement. *Evidence,* Admissions and confessions. *Constitutional Law,* Admissions and confessions. *Homicide. Insanity.*

On a motion to suppress a defendant's statements to police from evidence at his trial on indictments for murder and arson, the judge's finding that the statements were a meaningful act of volition had adequate support in the record, where their clarity and detail suggested a normal memory and lack of confusion, and the judge was not required to allow the motion on the basis of other evidence that the defendant was suffering from intermittent schizophrenia or toxic psychosis. [90-101]

At the trial of indictments for murder and arson, the judge was not required to suppress from evidence two statements by a defendant, one to a guest at a party, to the effect that he intended to set the fire, and the other to a fellow inmate at a house of correction, boasting of having done so, in the absence of evidence that either statement was the product of coercion. [101-102]

At the trial of indictments for murder in the first degree, the circumstances required the judge to instruct the jury, in accordance with the Massachusetts "humane practice," that the Commonwealth had the burden of proving beyond a reasonable doubt that the defendant's statements to police were voluntary, and his failure to give such an instruction, in light of the importance of the statements to the prosecution's case and of substantial evidence that the defendant had been suffering from a psychotic episode both before and after the crimes, created a substantial likelihood of a miscarriage of justice. [102-103]

At the trial of indictments, in which the major issue was the defendant's criminal responsibility, the judge erred in excluding testimony of the defense psychiatrist as to whether statements made by the defendant to a fellow inmate at a house of correction were the product of a rational intellect. [103-104]

An expert witness may testify to his opinion concerning a defendant's criminal responsibility only in accord with the standard set out in *Commonwealth* v. *McHoul,* 352 Mass. 544 (1967). [104]

INDICTMENTS found and returned in the Superior Court Department on September 7, 1978.

A motion to suppress evidence was heard by *Keating*, J., and the cases were tried before him.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*James A. O'Donovan* for the defendant.

*Dyanne Klein Polatin*, Assistant District Attorney, for the Commonwealth.

ABRAMS, J.  The defendant appeals seven convictions of murder in the second degree on seven indictments which charged murder in the first degree,[1] and a conviction of arson.[2]  The defendant claims error in (1) the denial of his motion to suppress; (2) the failure of the judge to instruct the jury on the issue of voluntariness; (3) the exclusion of testimony by a defense psychiatrist as to whether the defendant's statements to a fellow inmate were the product of a rational mind; and (4) the admission of testimony by the Commonwealth's psychiatrist on the issue of criminal responsibility. We conclude that the judge correctly denied the motion to suppress.  However, we also conclude that the judge erred in failing to instruct the jury on the issue of voluntariness, in excluding the testimony of the defense psychiatrist and in

---

[1] At the conclusion of the Commonwealth's case, the judge allowed the defendant's motion for required findings of not guilty to so much of the indictments as charged murder in the first degree.  The judge denied the defendant's motion for required findings of not guilty to so much of the indictments as charged murder in the second degree, and manslaughter, and to the indictment for arson.  The defendant does not claim error in these rulings, and we deem the defendant's failure to argue these issues as a waiver.  See *Commonwealth* v. *Cundriff*, 382 Mass. 137, 150 n.22 (1980), cert. denied, 451 U.S. 973 (1981); Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975).  However, pursuant to G. L. c. 278, § 33E, we consider the judge's denial of the defendant's motion.  See note 11, *infra*.  We conclude that there is ample evidence to withstand that motion.  *Commonwealth* v. *Borans*, 379 Mass. 117, 134-135 (1979).

[2] The defendant was sentenced to concurrent terms of life imprisonment on the murder convictions, and a concurrent sentence of eighteen to twenty years on the arson conviction.

admitting the testimony of the Commonwealth's psychiatrist. We therefore reverse and remand for a new trial.

We summarize the facts. On April 9, 1978, an apartment building at 39 Chelmsford Street, Lawrence, burned down. Seven people died in this fire. The defendant was at the scene of the fire.

On April 9, 11, and 13, 1978, the defendant gave detailed statements to the police.[3] On each occasion, an officer of the Lawrence police department advised the defendant in Spanish, his native language, of the Miranda warnings. Prior to giving each of these statements, the defendant signed a card indicating that he understood these warnings.

On April 8, 1978, the defendant attended a party. At that party he told one witness that "he was going to set fire on Chelmsford Street."[4] At approximately 5 A.M., on April 9, 1978, the fire broke out at 39 Chelmsford Street.

After his arrest, the defendant was taken to the Essex County house of correction. While there, the defendant bragged to a fellow inmate that he set the fire at 39 Chelmsford Street.

Prior to trial, the defendant moved to suppress the statements he made to the police and these private citizens. The

---

[3] On April 9, 1978, the defendant told the police that he walked by 39 Chelmsford Street on his way home from a party. Arriving at 39 Chelmsford Street, he saw flames coming out of the house. When the police pointed out that 39 Chelmsford Street was not on his way home, the defendant said that he was going to see a girl friend on Center Street. However, the defendant refused to disclose the name or address of this girl friend.

During this interview, the defendant also admitted that he had entered the building and that he had a lighter in his hand when he left the building. The defendant said that he went inside to warn people to leave the building. Because of all the smoke, the defendant said that he needed his lighter to see.

On April 11, 1978, the defendant did not deny that he had told a person at the April 9 party that he was going to burn Chelmsford Street. Instead, he said that he did not remember making this statement.

On April 13, 1978, the defendant admitted that a friend drove him to Chelmsford Street fifteen minutes before the fire.

[4] The defendant had lived at 39 Chelmsford Street with one of the tenants and her two children. Prior to the fire, the tenant ordered the defendant to leave the premises.

judge denied this motion, and the trial proceeded. The main issue at trial was criminal responsibility.

1. *Motion to Suppress.*

a. *Statements to police.* The defendant claims that his statements to the police were inadmissible, because they were not the product of a rational intellect.[5] We disagree.

"[B]efore any statement by a defendant to law enforcement officers or their agents may be placed before the jury, the Commonwealth must prove voluntariness beyond a reasonable doubt. If the judge concludes that [a] defendant's statements are voluntary beyond a reasonable doubt, that conclusion 'must appear from the record with unmistakable clarity.'" *Commonwealth* v. *Tavares,* 385 Mass. 140, 152 (1982), quoting *Sims* v. *Georgia,* 385 U.S. 538, 544 (1967). Moreover, the judge's decision as to the voluntariness of the defendant's statements involves a consideration of the defendant's mental condition. *Commonwealth* v. *Chung,* 378 Mass. 451, 456-457 (1979). *Commonwealth* v. *Johnston,* 373 Mass. 21, 25 (1977). *Commonwealth* v. *Mahnke,* 368 Mass. 662, 690 (1975), cert. denied, 425 U.S. 959 (1976). See *Eisen* v. *Picard,* 452 F.2d 860 (1st Cir. 1971), cert. denied, 406 U.S. 950 (1972). "If the defendant comes forward with evidence of insanity at the time of his [statements], the judge is obliged initially to determine whether the statements given were the 'product of a rational intellect as part of the issue of voluntariness.'" *Commonwealth* v. *Chung, supra* at 457, quoting *Commonwealth* v. *Johnston, supra. Commonwealth* v. *Cole,* 380 Mass. 30, 40 (1980).

At the suppression hearing, the judge considered the defendant's mental state. He gave special attention to the expert testimony presented by two psychiatrists.[6] However,

---

[5] The defendant concedes that the police fully apprised him of the Miranda warnings. Thus, the defendant does not argue that the judge should have suppressed the statements to the police because they violated the requirements of *Miranda* v. *Arizona,* 384 U.S. 436 (1966).

[6] The defendant's psychiatrist and the Commonwealth's psychiatrist testified at the suppression hearing. The Commonwealth's expert examined the defendant's statements to the police and determined that the defendant

because the statements to the police were "chronological," "coherent," and exculpatory, the judge determined that the defendant "understood his position." He therefore concluded that these statements were a "meaningful act of volition."

These findings are amply supported by the record.[7] There was evidence at the suppression hearing that when the police began their interrogation, the defendant was "calm," "coherent," and "cooperative." Moreover, the clarity and detail of the defendant's statements to the police suggest a normal memory and a lack of confusion. When questioned about the fire, the defendant denied that he was responsible. This attempt at exculpation is evidence from which the judge could find that the defendant was aware that his statements to the police could have adverse consequences, and therefore the statements were voluntarily made.

Although there was evidence that the defendant was suffering from intermittent schizophrenia or toxic psychosis at the time he gave his statements, the judge was not required to allow the motion to suppress. "[T]here is no per se rule holding inadmissible [statements] given by individuals suffering severe psychotic conditions. Rather, a [statement] is inadmissible if it would not have been obtained but for the effects of the confessor's psychosis. There is nothing unfair about using the admissions of a psychotic individual where the giving of the admissions is not substantially related to the effects of the psychosis. In such a case, no advantage has been taken of the individual's disability."[8]  *Gibbs* v.

---

was criminally responsible. Relying in part on the statements to the inmate, the defense psychiatrist concluded that the defendant lacked criminal responsibility.

[7] Other evidence presented at the suppression hearing supports the judge's findings. Two newspapermen who were present at the scene of the fire testified that they spoke with the defendant, and that he was responsive to their questions and gave them a coherent story.

[8] Courts do exclude statements by individuals suffering from mental illness if the disease rendered the individual incapable of understanding the meaning and effect of a confession or caused the individual to be indifferent to self-protection. See *Pea* v. *United States*, 397 F.2d 627, 634-635 (D.C. Cir. 1967).

*Warden of Ga. State Penitentiary,* 450 F. Supp. 242, 244 (M.D. Ga. 1978), aff'd 589 F.2d 1113 (5th Cir. 1979).

b. *Statements to civilians.* The defendant made two statements to civilians, which he sought to suppress. On April 8, 1978, he told one witness that he was going to set fire to Chelmsford Street. After his arrest, he boasted to a fellow inmate at the Essex County house of correction in Salem that he set the fire. Relying on *Commonwealth* v. *Mahnke,* 368 Mass. 662 (1975), the defendant claims that the judge erred in admitting these statements, because he failed to consider whether these statements were the product of a rational intellect. We disagree.

In *Commonwealth* v. *Mahnke,* 368 Mass. 662, 679-681 (1975), we held that a judge must determine the voluntariness of statements extracted by private coercion unalloyed with any government involvement. We reached this result because "a statement obtained through coercion and introduced at trial is every bit as offensive to civilized standards of adjudication when the coercion flows from private hands as when official depredations elicit a confession. Statements extracted by a howling lynch mob or a lawless private pack of vigilantes from a terrorized, pliable suspect are repugnant to due process mandates of fundamental fairness and protection against compulsory self-incrimination. See *People* v. *Berve,* 51 Cal. 2d 286, 290 (1958)." *Commonwealth* v. *Mahnke, supra* at 681.

But that rationale does not apply to this case. At the suppression hearing there was no evidence that the defendant's statements to private citizens were the product of coercion.[9] Thus, our decision in *Commonwealth* v. *Mahnke, supra,* did not require the judge to determine whether the defend-

---

[9] Under *Commonwealth* v. *Mahnke,* 368 Mass. 662, 679-681 (1975), a judge must determine the voluntariness of statements to private citizens, if the defendant introduces some evidence of physical or psychological coercion. See, e.g., *United States* v. *Robinson,* 439 F.2d 553 (D.C. Cir. 1970); *People* v. *Haydel,* 12 Cal. 3d 190 (1974). We leave open the issue whether a judge is ever required to determine the voluntariness of statements to civilians in circumstances that fall short of coercion.

ant's statements to private citizens were a meaningful act of volition.[10]   The judge acted properly in denying the defendant's motion to suppress these statements.

2. *Failure to Instruct the Jury on the Issue of Voluntariness.*

The defendant claims that the judge erred because he failed to instruct the jury on the issue whether the defendant's statements to the police were the product of a rational intellect.   We agree.

"Our 'humane practice' requires that 'when [a defendant's incriminating] statements . . . are offered in evidence, the. question whether they were voluntary is to be decided at a preliminary hearing by the presiding judge in the absence of the jury.   If he is satisfied that they are voluntary, they are admissible; otherwise they should be excluded.'"   *Commonwealth* v. *Cole,* 380 Mass. 30, 39-40 (1980), quoting *Commonwealth* v. *Marshall,* 338 Mass. 460, 461-462 (1959).   *Commonwealth* v. *Vick,* 381 Mass. 43, 45 (1980). *Commonwealth* v. *Chung,* 378 Mass. 451, 456 (1979).   If the judge decides that they are admissible, he should then "instruct the jury that the Commonwealth has the burden of proving beyond a reasonable doubt that the statement[s] [were] voluntary and that the jurors must disregard the statement[s] unless the Commonwealth has met its burden."   *Commonwealth* v. *Tavares,* 385 Mass. 140, 152 (1982).   "While there is no duty to ask the jury to pass on voluntariness unless it is made a live issue at trial, *Commonwealth* v. *Alicea,* 376 Mass. 506, 522-523 (1978), 'if credible evidence of insanity at the time of the [statements] is presented to the jury, our practice requires jury reconsideration as to the question of the defendant's rationality, . . . "as part of the issue of voluntariness."'"   *Commonwealth* v. *Cole,* 380 Mass. 30, 40 (1980), quoting *Commonwealth* v. *Chung,* 378 Mass. 451, 456-457 (1979).

At trial, there was substantial evidence before the judge that the defendant was suffering from a psychotic episode

---

[10] Since the judge was not required to determine whether the defendant's statements to private citizens were a meaningful act of volition, it follows that he did not have to submit this issue to the jury.

for one month before the crime, and for a short time after the crime. Thus, "the judge had an independent obligation to instruct the jury to consider the voluntariness of the [defendant's statements to the police]." *Commonwealth* v. *Cole,* 380 Mass. 30, 41 (1980), quoting *Commonwealth* v. *Chung,* 378 Mass. 451, 458 n.8 (1979). See *Commonwealth* v. *Vick,* 381 Mass. 43, 45 (1980). See also *Commonwealth* v. *Tavares,* 385 Mass. 140, 150 (1982).

Moreover, the Commonwealth's psychiatrist relied on the statements to the police in arriving at his opinion on criminal responsibility. The statements were a critical part of the Commonwealth's case both on the issue of guilt and on the issue of criminal responsibility. In these circumstances, we conclude that there is a substantial likelihood of a miscarriage of justice. See G. L. c. 278, § 33E; *Commonwealth* v. *Cole,* 380 Mass. 30, 38-39 (1980); *Commonwealth* v. *Chung,* 378 Mass. 451 (1979); *Commonwealth* v. *Johnston,* 373 Mass. 21 (1977). Thus, the judge's failure to instruct the jury on the issue of voluntariness requires reversal of the defendant's convictions of murder in the second degree.[11]

3. *Exclusion of Testimony by the Defense Psychiatrist.*

The defendant claims that the judge erred in excluding the testimony of the defense psychiatrist as to whether his statements to a fellow inmate were the product of a rational intellect.[12] We agree.

The defense psychiatrist characterized the defendant's statements to the inmate as suggestive of psychosis, and used these statements as one basis for his conclusion that the defendant lacked substantial capacity to appreciate the crimi-

---

[11] Although the defendant did not object to the charge on this ground, these crimes occurred before July 1, 1979. We therefore review these convictions under G. L. c. 278, § 33E. See *Commonwealth* v. *Davis,* 380 Mass. 1, 12-17 (1980).

[12] The Commonwealth objected to the admission of this testimony. The basis of the Commonwealth's objections is not clear. The defendant made a timely offer of proof that the psychiatrist would testify that the statements to the inmate were not the product of a rational intellect.

nality of his conduct or to conform his conduct to the requirements of the law. See *Commonwealth* v. *McHoul,* 352 Mass. 544 (1977). The excluded testimony on the question whether the statements to the inmate were the product of a rational intellect might have added support to that conclusion. Since criminal responsibility was the main issue at trial, the exclusion of the defense psychiatrist's testimony requires reversal of the defendant's conviction of arson as well as his convictions of murder in the second degree. Cf. *Commonwealth* v. *Johnston,* 373 Mass. 21 (1977).

4. *Admission of Testimony by the Commonwealth's Psychiatrist.*

Over the defendant's objection, the judge allowed the Commonwealth's expert to testify that the defendant was criminally responsible. The defendant argues that the admission of the expert's opinion in this form was error. We agree. An expert may only express his opinion concerning a defendant's criminal responsibility in accord with the standard set out in *Commonwealth* v. *McHoul,* 352 Mass. 544 (1967). See *Commonwealth* v. *Laliberty,* 373 Mass. 238 (1977).

The judgments are reversed, the verdicts set aside, and the cases are remanded to the Superior Court for a new trial.

*So ordered.*