Grabau, J.
INTRODUCTION
The Defendant, Welerson Pereira (“Pereira”), has been indicted for armed assault by means of a dangerous weapon, assault with intent to murder, and mayhem. Pereira moves this court to suppress all statements he made on the ground that the statements resulted from the police’s illegal entry into his home. Pereira contends that the police officers obtained his statements in violation of his rights as guaranteed under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. Pereira further contends that he did not knowingly, intelligently and voluntarily waive his rights to remain silent.[1] For the reasons stated below, Pereira’s Motion to Suppress is DENIED.
FINDINGS OF FACTS
Based upon all the evidence I find credible and resolving questions of credibility where they occur, I find the following material facts and make the following rulings of law.
On the evening of May 29, 1999, Edwin Ojeda (“Ojeda”), went to a hotel room party at the Town Line Inn located in Melrose, Massachusetts. Ojeda arrived with a friend, Angelo Hernandez (“Hernandez”). Shortly after their arrival, Ojeda and Hernandez left the hotel room and went outside. Another guest of the party followed Ojeda outside and subsequently got into an argument with him. During the argument, Ojeda struck the guest. At this time, Pereira came out of the hotel room. Simultaneously, Hernandez heard a clicking sound which he recognized as a sound similar to that of a utility knife opening. Ojeda and several others began running after Hernandez and Pereira. Hernandez tripped and fell; Pereira fell over him. Ojeda went to assist Hernandez off the ground, at which time Pereira turned around and slashed Ojeda’s face. Ojeda was taken to the Brigham and Women’s Hospital and was treated for a five to seven inch laceration which extended from the top of his lip to his left eye.
Shortly after Ojeda was slashed, Sergeant Richard Kendall (“Sgt. Kendall”), of the Melrose Police Department, responded to a 911 call and arrived at the Town Line Inn. Sgt. Kendall learned that there had been a fight, that someone had been stabbed and had been taken to the hospital. Sgt. Kendall also learned that suspects had fled on foot. Sgt. Kendall questioned Juan Gamez (“Gamez”) close to the scene of the crime. Gamez informed Sgt. Kendall that the individual who had attacked Ojeda was named Welerson or Wedington, had a middle name of Jose, was Spanish, was “skinny,” and had a scar on his face. Gamez also told Sgt. Kendall that Welerson lived across the street at 561 Broadway on the third floor, rear. Sgt. Kendall spoke with other witnesses who were uncooperative.
Sgt. Kendall went to the Brigham and Women’s Hospital within two hours of the event to interview Ojeda, the victim. Sgt. Kendall spoke with Ojeda but received limited information because Ojeda was in critical condition.
Sgt. Kendall later went to the Somerville Police Department and spoke to Patrolman Joseph Blair, Lieutenant Hyde and other uniformed officers. Sgt. Kendall learned that 561 Broadway was a multiple dwelling unit, and police had responded to that location many times in the past. These officers recommended that Sgt. Kendall speak with a Detective O’Meara who would be working later in the evening. When Sgt. Kendall spoke with Detective O’Meara he learned that Det. O’Meara had been to 561 Broadway and knew Wederson. Det. O’Meara provided Sgt. Kendall with Wederson’s full name, date of birth (July 7, 1979) and that Wederson had involvement with the Somerville Police Department. Det. O’Meara's description of Wederson fit the physical description of the suspect Sgt. Kendall sought in Ojeda’s attack.
On June 1, 1999, based on similarities in physical appearance, the age, and spelling of the name given to *228 him by Det. O’Meara, the police obtained a criminal complaint and arrest warrant from the Malden District Court for Wederson J. Pereira for assault with intent to murder, mayhem and assault with a dangerous weapon.[2] (Exhibit 1.)
At approximately 8:00 p.m., on June 1, 1999, Detectives Barry Campbell (“Det. Campbell”) and Mark Antonangeli (“Det. Antonangeli”) of the Melrose Police Department, Sgt. John Vozella of the Somerville Police Department, and uniformed officers of the two police departments went to 561 Broadway with the arrest warrant for Wederson J. Pereira. The police entered the apartment building through the front door which was open. They proceeded to the third floor and knocked on the apartment door. A woman between 40 and 50 years of age opened the door. She was thought to be Pereira’s mother. Pereira’s father and sister also appeared at the door. The police asked if Wederson Pereira was home. The father replied that he was. Det. Campbell and the other officers were led inside the apartment to the kitchen area by the father. Det. Antonangeli and Det. Campbell approached Wederston and yelled to the Somerville police officers in another part of the apartment that they had “him here.”
At the same time, Somerville police officers had entered a bedroom. Det. Vozella approached Pereira, who was getting dressed. Det. Vozella asked Pereira his name. Pereira responded “Who the fuck are you?” Det. Vozella explained that he was with the Somerville Police, informed Pereira of the charges and that he had an arrest warrant. Det. Vozella told Pereira to pull up his pants. After being placed in handcuffs, Pereira asked the police officers if they were going to read him his Miranda rights. Det. Vozella read Pereira the Miranda rights.[3] Pereira stated that he understood his rights. Thereafter, Pereira made statements about the incident of May 29th and explained that he had cut the other person in self-defense. As he was being removed from the apartment, Pereira made statements in Spanish to family members who were in the kitchen near the front door of the apartment. Pereira’s sister stated that they, the police, had the wrong man. At this time, Pereira, while in handcuffs, after having been read his Miranda rights, volunteered statements in English in which he admitted that he had been partying in Melrose. Referring to his brother Welerson, Pereira stated, “It’s not him, you are looking for me . . . I was partying in Melrose. You want me, I did it.”
On the evening of his arrest, Pereira gave no indication that he had consumed alcohol or drugs. His speech was not slurred and the police had no problem understanding Pereira. Furthermore, Pereira’s eyes were clear.
The police took Pereira to a police cruiser that was parked outside Pereira’s residence. While inside the police cruiser and without the police questioning him, Pereira made further statements. Pereira stated “I cut him.” Pereira continued to make statements without police questioning. He referred to Ojeda as “abad guy,” who came at him with a screwdriver, and that “it was him or me.”
Pereira also made repeated statements that he stabbed Ojeda in self-defense. Pereira stated that if they [the police] knew Ojeda, they would have said that by stabbing Ojeda he had done a good thing. Further, Pereira stated that if he “got out,” or even if he didn’t, Ojeda would kill him or he would have to kill Ojeda because that is the way it is “on the street.”
After Pereira’s arrest, the police decided to recall the arrest warrant (Exhibit 1) because of the misnomer. (Exhibit 4.)
DISCUSSION, SUBSIDIARY FINDINGS OF FACTS AND RULINGS OF LAW
Pereira contends that the police entered his residence pursuant to an invalid arrest warrant, and therefore any and all statements made by him flowing from his encounter with the police should be suppressed because of the illegal entry and arrest.
The Commonwealth contends that Pereira’s arrest was valid, that his statements were made voluntarily and that he willingly, knowingly an intelligently waived his Miranda rights.
The Police Entry
When police enter a dwelling for the purpose of a search or an arrest, ordinarily they must have a warrant. For purposes of the Fourth Amendment, it makes no difference whether the search of a home is for a person or a thing. Commonwealth v. Pietrass, 392 Mass. 892, 897 n. 4 (1984), quoting Steagald v. United States, 451 U.S. 204, 214 n.7 (1981). The Fourth Amendment states in pertinent part: “No warrant shall issue, but upon probable cause, supported by oath or affirmation and particularly describing the place to be searched, and the person or things to be seized.” (Emphasis added.) Article 14 of the Massachusetts Declaration of Rights requires that a warrant contain “a special designation of the persons or objects of search, arrest, or seizure . . . with the formalities prescribed by law.” (Emphasis added.) See Commonwealth v. Freiberg, 405 Mass. 282, 298 (1989); Commonwealth v. Cefalo, 381 Mass. 319, 327 (1980).
The particularity requirements in regard to the validity of an arrest warrant, rather than a search warrant, has not been squarely addressed in this Commonwealth. I rule that there is no reason to depart from the well established particularity requirements as they relate to search warrants. Both arrest warrants and search warrants are issued subject to the protections of the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights. The reasoning for the particularity requirement that it “makes general searches under [warrants] impossible and prevents the seizure of one thing [or person] under a warrant describing another” *229 is equally applicable to arrest and search warrants. Commonwealth v. Freiberg, supra at 298.
Given the circumstances regarding the similarities in the physical descriptions and of the names of Welerson Pereira and Wederson Pereira, the misnomer of the named subject of the arrest warrant does not negate the police’s reasonable good faith in this case. See Commonwealth v. Hecox, 35 Mass.App.Ct. 277, 280 (1993). I find that the arrest warrant, as written and issued, was valid to authorize the police to enter Pereira’s residence in order to affect an arrest of Pereira. The warrant, álthough technically flawed, was valid to support the police entry into Pereira’s residence. The warrant should not be subject to “ ’hypertechnical’ scrutiny,” Commonwealth v. Wright, 15 Mass.App.Ct. 245, 248 (1983), Commonwealth v. Freiberg, 405 Mass. 282, 300 (1989). I further find, beyond a reasonable doubt, that the entry into Pereira’s apartment was consented to by Pereira’s parents. There is no evidence that the police forced their way into the apartment.
Pereira’s Arrest and Statements
Initially, the police questioned Pereira’s brother, Wederson, because he fit the physical description of the subject and was in fact named in the warrant. When questioned, Wederson Pereira denied being involved in the incident at the Town Line Inn. Simultaneously, Pereira affirmed his brother’s lack of involvement and made spontaneous statements regarding his own culpability. Statements that Pereira offered freely and voluntarily without any compelling influence are not the product of interrogation and therefore are admissible in evidence. Commonwealth v. Diaz, 422 Mass. 269, 271 (1996) (the defendant “blurted out” inculpating statements); Commonwealth v. Smith, 35 Mass.App.Ct. 655, 657 (1993) (there is no interrogation where the defendant spoke to the police before the police spoke to him).
Pereira’s Waiver of Miranda Rights
Pereira also contends that I should suppress all post -Miranda statements he made because he did not waive his Miranda rights knowingly and intelligently. In order to consider whether Pereira effectively waived and agreed to make statements to the police, there must be custodial interrogation. Custodial interrogation exists where there is: (1) questioning; (2) initiated by law enforcement; and (3) after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. Commonwealth v. Hosey, 368 Mass. 571 (1975); Miranda v. Arizona, 384 U.S. 436, 444 (1966). In this case, the police did not question Pereira. Rather Pereira, continually, at his residence after being given Miranda warnings, and during the trip from his residence to the police station, made statements, unsolicited by the police, regarding the incident and his alleged involvement. See Commonwealth v. Diaz, supra at 271, Commonwealth v. Swenor, 3 MassApp.Ct. 65, 68 (1975) (because there was no evidence that the police questioned the defendant, statements volunteered by the defendant during a ride in a police car were admissible). Where there is no custodial interrogation, I disagree with Pereira’s contention that the statements are “fruit[s] of the poisonous tree.” See Wong Sun v. United States, 371 U.S. 471 (1963). The statements made by Pereira are statements outside Miranda's protections and are not suppressed on this ground.
Moreover, even if I were to assume that Pereira’s statements were made while in custody and subject to be protected by Miranda, the Commonwealth has proved beyond a reasonable doubt that Pereira had waived his Constitutional rights “voluntarily, knowingly, and intelligently.” Commonwealth v. Garcia, 379 Mass. 422, 429 (1980); Commonwealth v. Jackson, 377 Mass. 319, 325 (1979) (quoting Miranda v. Arizona, 384 U.S. at 444). “The cases yield no talismanic definition of voluntariness, mechanically applicable to those situations where the question has arisen.” Schneckloth v. Bustamonte, 412 U.S. 218, 224 (1972). The statements must be “the product of an essentially free and unconstrained choice,” Culombe v. Connecticut. 367 U.S. 568, 602 (1960), or "of rational intellect and free will.” I am obliged to examine the totality of the surrounding circumstances, both in the characteristics of the accused, and the details of the alleged interrogation. Commonwealth v. Daniels, 366 Mass. 601, 606 (1975).
There are many factors which I must consider in determining whether or not inculpatory statements or confessions were given voluntarily. Commonwealth v. Selby, 420 Mass. 656, 663 (1995), quoting Commonwealth v. Mandile, 397 Mass. 410, 413 (1986). I must consider if Pereira was tricked in any way, Commonwealth v. Jackson, 377 Mass. 319, 327 (1979); whether threats or promises were made to induce Pereira’s statements, Commonwealth v. Hunt, 12 Mass.App.Ct. 841, 844 (1981); whether Pereira was under the influence of drugs or alcohol, Commonwealth v. Doucette, 391 Mass. 443, 448 (1984); whether Pereira was undergoing drug withdrawal, Commonwealth v. Fielding, 371 Mass. 97, 105-13 (1976); Pereira’s age, intelligence, Commonwealth v. Meehan, 377 Mass. 552 (1979); Pereira’s mental and physical condition, Commonwealth v. Vazquez, 387 Mass. 96 (1982); and Pereira’s ability to speak and understand the English language, Commonwealth v. Garcia, 379 Mass 422, 427-30 (1980).
There is nothing in these facts to suggest that Pereira was under the influence of any intoxicant or that the Melrose or Somerville police coerced , intimidated or improperly induced a confession from Pereira. See, e.g., Haynes v. Washington, 373 U.S. 503, 501 (1963). Moreover, throughout his encounter with the police, Pereira attempted to offer exculpatory statements to show that he acted in self-defense. These statements evidence that Pereira was aware that *230 any statements made to the police could have adverse consequences. Commonwealth v. Vazquez, supra at 100.
I find that Pereira was alert, participated in a coherent exchange of dialog with the police, and even requested his Miranda rights to be read to him when he was placed in custody. The events of the night of June 1, 1999, occurred in his apartment where his father, mother, sister and brother were present. Therefore, even if Pereira’s statements were subject to Miranda protections, Pereira voluntarily, knowingly, and intelligently waived these protections and thus, his statements are not suppressed.
ORDER
For the foregoing reasons, it is ORDERED that the Defendant’s, Welerson Pereira’s, Motion to Suppress be DENIED.

 Pereira’s Motion to Suppress Statements focuses on the alleged illegal police entry and his contention that the statements he made thereafter are “fruits of the poisonous tree.” Pereira’s Memorandum in Support of Motion to Suppress, however, expands his theories of suppression and includes allegations that his statements were not “made freely, voluntarily and knowingly and was the product of misinformation and misleading interrogation tactics on the part of the Police.” Memorandum at page 2. Pereira does not contend that he was not given Miranda rights prior to being questioned.

 Wederson Pereira, was born on July 7, 1979, and is the younger brother of the Defendant, Welerson Pereira, whose date of birth is August 26, 1978.

 Det. Antonangeli entered the bedroom where Det. Vozella was questioning Pereira. He heard Det. Vozella arrest Pereira and then returned to the kitchen area. Det. Antonangeli thought that Det. Vozella had arrested the wrong person and wanted to inform Det. Campbell that “they had him over there.” Wederson was taken into the kitchen where other family members had gathered. Somerville police were walking Welerson in handcuffs from the bedroom into the common hallway.